ALBERT A. CORNISH, Respondent, *v.* CORNELIA A. CAPRON et al., Appellants.

The force and effect of a formal and complete covenant of warranty in a deed will not be cut down by words of doubtful import.

Defendants, C. and wife, executed a mortgage to B. on four parcels of land designated as 1, 2, 3 and 4 ; they subsequently sold and conveyed 2, 3 and 4, the grantee in his deed of 3 and 4 assuming and agreeing to pay said mortgage; these lots and also another, designated as No. 5, were subsequently conveyed to Mrs. C, who conveyed 2, 3 and 5 to W., he assuming and agreeing to pay said mortgage and executing to her a mortgage on the lots conveyed as security, in which he covenanted to make such payment.   Mrs. C thereafter conveyed No. 4 to plaintiff and assigned to him the W. mortgage.   The deed contained covenants of warranty and quiet enjoyment "according to a mortgage that day assigned " to the grantee.   The B mortgage was subsequently foreclosed and in pursuance of the judgment of foreclosure all the lands covered thereby were sold and conveyed and plaintiff surrendered to the purchaser possession of No. 4.   In an action to foreclose the W. mortgage and to recover damages of Mrs. C. for breach of the covenants in her deed of No. 4, *held,* that there was a breach of said covenants; that the words "according to a mortgage," etc., did not cut down or limit the liability of the covenantor, that plaintiff was entitled to enforce the mortgage in suit to the extent of the consideration paid by him; and that judgment for any deficiency was properly directed against Mrs. C.

(Argued November 30, 1892;  decided December 13, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an

order made at the February term, 1891, which affirmed a judgment in favor of plaintiff, entered upon a demurrer of the court on trial at Special Term.

In June, 1870, Jay Capron borrowed of Mary Banks the sum of $4,000 for which he gave her his bond conditioned for the payment of that sum January 1, 1880, with interest, and as collateral security for the payment of that sum, he with his wife, Cornelia A. Capron, gave to Mrs. Banks a mortgage on four parcels of land, designated in this record as 1, 2, 3 and 4. In April, 1874, Mr. and Mrs. Jay Capron deeded parcel No. 1 to Platt E. Capron, and in June, 1877, they conveyed to Elias Spencer parcels 3 and 4, and Spencer in the deed to him assumed and agreed to pay the Banks mortgage. Prior to that time Spencer had also become the owner of parcel No. 2. In June, 1877, Spencer conveyed parcels Nos. 2, 3 and 4, and also an other parcel designated as No. 5, to Mrs. Capron. Parcel No. 5 was not covered by the Banks mortgage. In April, 1887, Mrs. Jay Capron, for the consideration of $5,122.20 conveyed parcels Nos. 2, 3 and 5 to James Watson, who paid $1,122.20 of the purchase price in cash and for the balance he assumed and agreed to pay the Banks mortgage of $4,000, with interest thereon from January 1, 1878. To secure the payment of this sum, Watson on the same day gave back to Mrs. Capron a mortgage for $4,500, covering the lands conveyed to him, and in that mortgage he agreed with her that he would pay, or cause to be paid the Banks mortgage according to the conditions thereof; that in case he, his heirs and assigns should fail to pay Mrs. Banks or her heirs and assigns, the principal sum of $4,000, and interest thereon, as conditioned in her mortgage, it should be lawful for Mrs. Capron to demand payment of the sum of $4,500, mentioned in the mortgage to her which should become due and payable at once, and that it should then be proper for the owner or holder of the Watson mortgage to collect the same and after paying the Banks mortgage and all interest and costs thereon, to pay over the balance to Watson, his heirs and assigns; but that if the Watson mortgage failed to pay and

satisfy the Banks mortgage, then Watson was to pay the deficiency. In July, 1883, Mrs. Capron, in consideration of $1,075, paid to her, conveyed parcel No. 4 to the plaintiff, and in the deed she covenanted that the premises so conveyed "in the quiet and peaceable possession of the said Cornish, his heirs and assigns, she would warrant and defend against any person lawfully claiming the same, according to a mortgage that day assigned to the said Cornish." On the same day, and as a part of the same transaction, and resting upon the same consideration, the defendant, Cornelia A. Capron assigned to the plaintiff the Watson mortgage, with the bond accompanying the same and the money due or to grow due thereon, he to have and hold the same according to the conditions of the mortgage, but in no case to discharge the mortgage without the consent of Mrs. Capron, unless the Banks mortgage was fully paid and satisfied. The Watson mortgage so assigned has ever since been the property of the plaintiff. In 1887 the Banks mortgage was foreclosed, and in pursuance of the judgment of foreclosure all the premises therein described, including parcel No. 4, were sold to the defendant Bielby, and he took possession of the same. Thereafter the plaintiff commenced this action to foreclose the Watson mortgage and to recover damages against Mrs. Capron for breach of the warranty, contained in her deed to him of parcel No. 4. The action was brought to trial and the court at Special Term found that there was a breach of the warranty, contained in the deed of Mrs. Capron to the plaintiff; that by reason of the breach the plaintiff was entitled to recover of her the sum of $1,075, with interest; that the plaintiff had the right to enforce the Watson mortgage for his own benefit to the extent of his claim against Mrs. Capron for breach of her covenant above referred to; that the plaintiff was entitled to judgment of foreclosure, and that out of the proceeds of the sale, after payment of costs and expenses of the sale and of the action the sum of $1,075 and the interest be paid to the plaintiff, and that if there should not be enough to make such payment, a judgment for the defi-

ciency be entered against Mrs. Capron.   Mrs. Capron filed
proper exceptions to the findings of the trial court, and from
the judgment entered appealed to the General Term and then
to this court.

*Scripture & Backus* for appellants.

*D. E. Wager* for respondent.   The papers on this appeal,
brought up for examination by the General Term, are simply,
and alone, the judgment roll, and the exceptions annexed
thereto.   (Code Civ. Pro. §§ 994, 998 ; *Schwarz* v. *Weber*,
103 N. Y. 658 ; 2 Rumsey's Pr. 386, 387.)   As it does not
appear that the appellant submitted to the trial court any
requests to find facts, under section 1023 of the Code of Civil
Procedure, the exceptions to findings of fact cannot be heard
on this appeal.   (*Graff* v. *Ross*, 14 N. Y. S. R. 636 ; 47 Hun,
152 ; 2 Rumsey's Pr. 389 ; *Porter* v. *Smith*, 107 N. Y. 531 ;
*Sweet* v. *Morrison*, 30 N. Y. S. R. 23.)   As the title is in
James Watson, he is not liable to pay Mrs. Banks.   (*Vroo-
man* v. *Turner*, 69 N. Y. 280.)   To entitle Mary Banks (or
her assignee Bielby) to the Watson mortgage or its benefits,
the relation of principal and surety must exist between Wat-
son and Cornelia A., so far as Mary Banks is concerned, so
that the latter could claim by way of subrogation the Watson
mortgage as creditor of those two, or of one of them.   (*Halsey*
v. *Reed*, 9 Paige, 446 ; *King* v. *Whitely*, 10 id. 465 ; *Cornell*
v. *Prescott*, 2 Barb. 16 ; *Trotter* v. *Hughes*, 12 N. Y. 74 ;
*Burr* v. *Beers*, 24 id. 178 ; *Garnsey* v. *Rogers*, 47 id. 233 ;
*Thorp* v. *K. C. Co.*, 48 id. 253 ; *Vrooman* v. *Turner*, 69 id.
280 ; *Pardee* v. *Treat*, 82 id. 385 ; *Roe* v. *Barker*, Id.
431 ; *Dunning* v. *Leavitt*, 85 id. 30 ; *Carter* v. *Holahan*, 92
id. 498 ; *Rector, etc.*, v. *Mack*, 93 id. 488 ; *Seward* v. *Hunt-
ington*, 94 id. 104 ; *Wheat* v. *Rice*, 97 id. 296 ; *Darling* v.
*Skinner*, 42 Hun, 323 ; *Lorillard* v. *Clyde*, 16 N. Y. S. R.
587.)   To sustain an action for breach of covenant of war-
ranty, it is not essential for plaintiff to prove that he has been
forcibly evicted from the premises by paramount title.   (*Wood*

v. *Forncrook,* 3 T. & C. 303; *Tucker* v. *Cooney,* 34 Hun, 227; *Greenvault* v. *Davis,* 4 id. 643; *Clarke* v. *McNulty,* 3 S. & R. 372; Rawle on Cov. [5th ed.] § 134; *Stone* v. *Hooker,* 9 Cow. 154; *St. John* v. *Palmer,* 5 Hill, 599; *Brown* v. *Allen,* 32 N. Y. S. R. 796.) The Watson mortgage to Cornelia A. Capron, was a security and as a bond of indemnity to her, and when her thirty-seven and one-half acres were sold on the Banks foreclosure, by the very terms of the Watson mortgage, said Cornelia A. (and plaintiff, as her assignee) had a right to foreclose that Watson mortgage without waiting to be evicted from the thirty-seven and one-half acres. (*Rockfeller* v. *Donnelly,* 8 Cow. 623; *Churchill* v. *Hunt,* 3 Den. 321; *Wright* v. *Whiting,* 40 Barb. 235; *Jarvis* v. *Sewal,* Id. 449; *Gilbert* v. *Winans,* 1 N. Y. 550; *Thomas* v. *Allen,* 1 Hill, 145; *Bancroft* v. *Winspear,* 44 Barb. 209; *Johnson* v. *Tuttle,* 9 Hun, 469; *Beloni* v. *Friesbie,* 63 N. Y. 383–390; *Kohler* v. *Mathage,* 72 id. 266; *N. Bank* v. *Bigler,* 83 id. 51.) Mary Banks could make no claim to the proceeds of the twenty-two acres. (30 N. Y. S. R. 496.) The defendant's exceptions to the findings of the trial judge should be specific, and point out the particular error. If they do not, such exceptions are not available, if any part of the finding is good. (*Newlin* v. *Lyons,* 49 N. Y. 661; *Crawford* v. *Everson,* 68 id. 624; *Rogers* v. *Rogers,* 111 id. 237.)

*Per Curiam.* The defendant, Mrs. Capron, agreed to warrant and defend the land conveyed to the plaintiff against any person lawfully claiming the same, "*according to a mortgage that day assigned to the said Cornish,*" and the controversy between the parties to this appeal hinges upon the meaning and force of the phrase italicised. It is impossible to know with certainty what was in the minds of the parties when that phrase was used. It was preceded by a formal and complete covenant of warranty, and the force and effect of that covenant should not be cut down by any words of doubtful import, much less by words to which it is difficult to assign any definite meaning. It is probable that the parties meant

by the phrase quoted one of two things :   (1) Either that the plaintiff should have for his protection the Watson mortgage, at the same time assigned to him, and that he should hold that mortgage as collateral security to the covenant, and that he should have the right in case Watson did not pay the Banks mortgage to enforce the Watson mortgage according to its terms, and to thus indemnify himself, so far as he could for any damage he might sustain from a breach of the covenant. (2) Or that he should have the same protection against the Banks mortgage which Watson in his mortgage had agreed to give her, and whichever of these meanings we attribute to this language the same result is accomplished.   We are at least unable to see that this uncertain language cuts down or limits the liability of Mrs. Capron upon her covenant, and so no error was committed in giving that covenant the force and effect provided in the judgment.

Watson not having paid the Banks mortgage, Mrs. Capron, if she had retained the Watson mortgage, could have foreclosed it for her indemnity, and the plaintiff, as her assignee, may enforce it to the same extent as she could if she had not assigned it.

There is no plausibility in the claim that the covenant for quiet enjoyment was not broken.   The title was swept away by the foreclosure of the Banks mortgage, and the plaintiff relinquished possession of the land as he was bound to do after the foreclosure and sale and the conveyance made in pursuance thereof.

We see no reason to doubt that the judgment is right and it should be affirmed with costs.

All concur.

Judgment affirmed.